# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| MIRIAM E. DRIES, | : | No. 4:16-CV-01014 |
| --- | --- | --- |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| NANCY A. BERRYHILL,[1] | : | (Magistrate Judge Mehalchick) |
| *Commissioner of the* | : | |
| *Social Security Administration* | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### OCTOBER 31, 2017

Plaintiff, Miriam E. Dries, filed a complaint on May 27, 2016, naming as Defendant Carolyn W. Colvin, then Acting Commissioner of the Social Security Administration.[2] Because Plaintiff Dries ("Plaintiff") sought judicial review of the Commissioner's ("Commissioner") final decision, this matter was referred to Magistrate Judge Karoline Mehalchick for the preparation and recommended disposition under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

---

[1] The Complaint (ECF No. 1) correctly named Carolyn W. Colvin as Defendant, as she was the Acting Commissioner of the Social Security Administration at the time it was filed. As of January 23, 2017, Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill shall be substituted for Carolyn W. Colvin as Defendant in this matter.

[2] As noted in Footnote 1, Nancy A. Berryhill shall replace Carolyn W. Colvin as Defendant in this matter.

For the reasons that follow, Magistrate Judge Mehalchick's Report and Recommendation is adopted in full, and final judgment is entered against Plaintiff.

## I. BACKGROUND

Magistrate Judge Mehalchick's comprehensive disposition of May 3, 2017,[3] recommended that the Commissioner's decision be affirmed and that Plaintiff's request for benefits be denied.[4] Because I write for the parties, I will conserve judicial resources and not rehash Magistrate Judge Mehalchick's Report and Recommendation.

## II. LAW

### A. Standard of Review

When considering a social security appeal, the Court has plenary review of all legal issues decided by the Commissioner.[5] However, my review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."[6] The factual findings of the Commissioner, "if supported by substantial evidence, shall be conclusive. . . ."[7] "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might

---

[3] *See* ECF No. 24.
[4] *Id.* at 21.
[5] *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).
[6] *Poulos*, 474 F.3d at 91.
[7] 42 U.S.C. § 405(g).

accept as adequate to support a conclusion."[8] Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance.[9] "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] The United States Court of Appeals for the Third Circuit has stated:

> [O]ur decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.[11]

Therefore, a court reviewing the Commissioner's decision must scrutinize the record as a whole.[12]

### B. Objections to a Report and Recommendation

Upon designation, a magistrate judge may "conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact

---

[8] *Johnson*, 529 F.3d at 200 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)) (internal quotations and citations omitted).
[9] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).
[10] *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (citing *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted)).
[11] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983); *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986)).
[12] *Id.* (citing *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

and recommendations."[13] Once filed, this Report and Recommendation is disseminated to the parties in the case who then have the opportunity to file written objections.[14] When such objections are filed timely, the District Court must conduct a *de novo* review of those portions of the report to which objections are made.[15] Although the standard of review for objections is *de novo*, the extent of review lies within the discretion of the District Court, and the Court may otherwise rely on the recommendations of the magistrate judge to the extent it deems proper.[16]

For portions of the Report and Recommendation to which no objection is made, the Court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."[17] Regardless of whether timely objections are made by a party, the District Court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.[18]

---

[13] 28 U.S.C. § 636(b)(1)(B).
[14] 28 U.S.C. § 636(b)(1).
[15] 28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011)
[16] *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D. Pa. 2011) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).
[17] Fed. R. Civ. P. 72(b), advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D. Pa. 2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that judges should give some review to every Report and Recommendation)).
[18] 28 U.S.C. § 636(b)(1); Local Rule 72.31.

## III. ANALYSIS

Plaintiff raises the following objections to Magistrate Judge Mehalchick's Report and Recommendation: The Administrative Law Judge ("ALJ") committed reversible error in (1) failing to give Dr. Masey's Opinion a more comprehensive finding; (2) failing to properly evaluate all of Plaintiff's medical determinable impairments; and (3) failing to address the restrictions found in Dr. Goodman's medical opinion.[19] I will discuss each of these claims, in turn.

### A. ALJ's failure to assign weight to Dr. Masey's opinion was not harmless error.

Plaintiff first contends that the ALJ failed to properly consider Dr. Masey's opinion. Plaintiff specifically argues that the ALJ committed reversible error in failing to articulate the weight she accorded to Dr. Masey's opinion.[20] Plaintiff contrasts the comprehensive evaluation the ALJ gave to the State agency psychological consultant's opinion, where the ALJ articulated the weight she accorded to it, with the absence of such an evaluation of Dr. Masey's opinion.[21] Plaintiff also argues the single paragraph that the ALJ provided in summarizing Dr. Masey's opinion coupled with the lack of explanation as to the ALJ's findings was reversible error.[22]

---

[19] *See* ECF No. 25, at 2, 5, 6, & 9.
[20] *Id.* at 2.
[21] *Id.* at 3; *see also* ECF No. 10-3, at 9.
[22] *Id* at 3-4.

While the ALJ failed to articulate the weight that she accorded to Dr. Masey's opinion as required under 20 C.F.R. § 416.927(c), I find such error harmless. Several Courts of Appeal have dealt with this issue. For example, the United States Court of Appeals for the Tenth Circuit in *Keyes-Zachary v. Astrue* found that an ALJ's failure to articulate what weight the ALJ accorded to a physician's report was harmless where the ALJ developed a residual functional capacity ("RFC") consistent with the physician's findings.[23] Similarly, the United States Court of Appeals for the Eleventh Circuit in *Lara v. Comm'r of Soc. Sec.* found the ALJ's failure to articulate the weight accorded to the medical opinions was harmless error because the ALJ's decision was consistent with those medical opinions.[24] Furthermore, the Sixth and Seventh Circuits found an ALJ's failure to assign weight to medical opinions harmless error when the ALJ's opinion was consistent with the medical findings.[25]

The United States Court of Appeals for the Third Circuit has also addressed this issue, in part, in *Fargnoli v. Massanari*.[26] In *Fargnoli*, the ALJ's findings not

---

[23] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012).

[24] *Lara v. Comm'r of Soc. Sec.*, No. 16-16247, 2017 WL 3098126, at *6 (11th Cir. July 21, 2017).

[25] *See Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) ("Therefore, failure to explicitly state how much weight an ALJ was providing such observations is harmless under *Wilson* because the ALJ's opinion is completely consistent with such observations."); *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (holding the ALJ's failure to "provide an accurate and logical bridge" in assigning weight is harmless error).

[26] *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).

only contradicted the medical opinions given by two other doctors,[27] but also failed to mention the contradictory evidence and articulate the weight the ALJ accorded to the medical opinions.[28] As the Third Circuit stated, "[w]here there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided."[29] Despite the ALJ's failure to articulate the weight she accorded to Dr. Masey's Opinion, *Fargnoli* is not particularly instructive here.

The instant case is distinguishable from *Fargnoli* because the ALJ's findings were not inconsistent with or contradictory to Dr. Masey's medical opinion. Dr. Masey here noted that Plaintiff "would likely have difficulties in employment situations requiring any degree of speed" and would "perform best under circumstances when she is able to perform one task and start another rather than having to multitask."[30] Based on the medical opinions and evidence provided, the ALJ found that the Plaintiff "is capable of performing work that can be learned within 1 month and requires only occasional decision making and occasional

---

[27] *Id.*
[28] *Id.*
[29] *Id.* at 42.
[30] ECF No. 10-3, at 9.

changes to the work setting. The [Plaintiff] is precluded from performing work requiring a production rate pace."[31]

Both findings reflect the view that Plaintiff would perform best in an employment situation that does not require fast-paced tasks, permits her to focus on one task at a time, and provides her an adequate timeframe to learn and adapt to the task. The ALJ clearly considered all relevant medical opinions, including Dr. Masey's, and based her decision accordingly. As such, I find the ALJ's failure to articulate the weight she accorded to Dr. Masey's medical opinion to be harmless error.

To briefly address Plaintiff's other quarrels, Plaintiff first argues paragraph size matters. Contrary to Plaintiff's argument, I am hard-pressed to find that the differences in paragraph size rise to the level of inequality that Plaintiff urges. Rather than looking to the substantive aspects of the opinions, Plaintiff remains particularly perturbed over paragraph length and the ALJ's word choice of "as for the opinion evidence," which introduced a paragraph discussing the State agency medical consultant's opinion.[32] These superficial concerns form no basis on which a claim can be made.

---

[31] *Id.* at 11.
[32] ECF No. 25, at 3; *see* ECF No. 10-3, at 14.

Plaintiff also dissents regarding the difference between neuropsychological and psychiatric evaluations.[33] As Plaintiff correctly notes, Dr. Masey performed a neuropsychological evaluation; however, the neuropsychological evaluation indicated "mild organic psychiatric conditions."[34] Plaintiff fails to understand that a neuropsychological evaluation is a particular assessment of cognitive processes to determine whether there are any overarching psychiatric[35] conditions.

Accordingly, I find Plaintiff's first contention without merit and the ALJ's conclusions based on substantial evidence.

> **B.  The ALJ's failure to evaluate all of Plaintiff's medically determinable impairments was not harmless error.**
>
> **1.  Obesity**

Plaintiff next contends that the ALJ's failure to discuss obesity as a medically determinable impairment resulted in reversible error.[36] Plaintiff argues that the ALJ should have considered her obesity as a severe impairment because Plaintiff referenced her weight and how it exacerbated her impairments during the administrative hearing, and because the medical evidence referenced obesity.[37]

---

[33] *See* ECF No. 25, at 4.
[34] ECF No. 10-4, at 9.
[35] *See Psychiatric,* Black's Law Dictionary (10th ed. 2014) (defining psychiatric as "of, relating to, or involving the study or treatment of mental, emotional, and behavioral disorders by medical doctors trained in the field of psychiatry.").
[36] *Id.* at 9. Plaintiff's contention that the ALJ's failure to discuss her obesity as a medically determinable impairment was not harmless error is her fourth argument. This contention and her second – that the ALJ failed to address Plaintiff's diagnosis of pain disorder – are similar and are best discussed together.
[37] *Id.*

As support for her contention, Plaintiff cites the Third Circuit case of *Diaz v. Comm'r of Soc. Sec.*[38] In opposition, the Commissioner adopts the Report and Recommendation's discussion of *Rutherford v. Barnhart*.[39] Both cases propel this matter one way or another; therefore, I will discuss each case to fully illuminate which path this matter should take.

In *Rutherford*, the plaintiff, who was five feet, two inches (5'2") tall and weighed 245 pounds,[40] met with several doctors "to assess her condition."[41] At the ALJ hearing, the plaintiff testified as to experiencing "weakness in her right arm," "pain in her lower back," and her requiring the use of a cane to "steady herself while walking and standing."[42] The ALJ concluded at step two of the sequential analysis that the plaintiff suffered from "severe impairments in her right upper extremity and lower back"; but, in step three, concluded that the plaintiff "did not have impairments that would permit a showing per se disability."[43] Although the ALJ concluded at step four that the plaintiff "could no longer perform her past relevant work," he concluded at step five that a number of jobs existed in the economy that the plaintiff could perform, thereby finding her not disabled.[44]

---

[38] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009).
[39] *See Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005).
[40] *Id.* at 552.
[41] *Id.* at 550.
[42] *Id.* at 551.
[43] *Id.* at 552.
[44] *Id.*

On appeal, the plaintiff contended that the ALJ's failure to consider her weight was reversible error.[45] The plaintiff argued Social Security Ruling 00-3p required the ALJ to consider obesity explicitly in his sequential analysis, especially when her height and weight were provided in the medical records.[46]

The Third Circuit disagreed with the plaintiff's argument, finding a Seventh Circuit case, *Skarbek v. Barnhart*, persuasive.[47] In *Skarbek*, the Court stated:

> An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence. Although Skarbek did not specifically claim obesity as an impairment (either in his disability application or at his hearing), the references to his weight in his medical records were likely sufficient to alert the ALJ to the impairment. Despite this, any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case. Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk. Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.[48]

In tandem with *Skarbek*, the Third Circuit in *Rutherford* noted that the plaintiff failed to assert obesity as impairment, even when the ALJ directly asked her to list any additional impairments at the hearing.[49]

---

45 *Id.*
46 *Id.*
47 *See Skarbek v. Barnhart*, 390 F.3d 500 (7th Cir. 2004) (per curiam).
48 *Rutherford*, 399 F.3d at 552-53 (citing *Skarbek*, 390 F.3d at 504).
49 *Id.* at 553.

Moreover, the Third Circuit reasoned that the plaintiff never specified how her obesity "ma[de] it more difficult for her to stand, walk and manipulate her hands and fingers."[50] The Court found that the plaintiff's generalized response that her weight makes things more difficult could not justify remand when compared to the "voluminous medical evidence" the ALJ evaluated.[51] The Court held that, because the plaintiff's doctors were aware of her obesity and they reasonably incorporated such an impairment into their opinions, the ALJ's adoption of their opinions resulted in a "satisfactory if indirect consideration of that condition," i.e., her obesity.[52]

In *Diaz*, by contrast, the plaintiff was four feet, eleven inches (4'11") tall and weighed 252 pounds.[53] The plaintiff testified that "her pain was most acute in the region between her hip and left knee, and described frequent swelling in her knees and ankles."[54] The plaintiff also testified that "she could sit for about half an hour[,] and that she need[ed] to take shifts between sitting and standing."[55] In addition to the plaintiff's testimony, the "ALJ considered evidence presented by numerous doctors concerning [the plaintiff's] physical and mental limitations."[56]

---

[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Diaz*, 577 F.3d at 502.
[54] *Id.*
[55] *Id.* (internal quotation marks omitted).
[56] *Id.*

Evaluating the evidence, the ALJ proceeded through the five-step sequential analysis.[57] After finding that the plaintiff "was not engaged in substantial gainful activity," the ALJ continued to step two where he determined that the plaintiff's severe impairments consisted of the following: "diabetes, hypertension, asthma, back disorder, degenerative joint disease of the knee, adjustment disorder, and *obesity*."[58] The ALJ also found that the plaintiff's diagnosis of adjustment disorder constituted a severe impairment.[59] In step three, the ALJ only discussed the plaintiff's "diabetes, hypertensive cardiovascular disease, chronic pulmonary insufficiency and asthma, disorder of the spine, joint dysfunction, and mental capacity."[60] The ALJ failed to discuss the impact of plaintiff's obesity individually and "in combination with her other impairments," despite acknowledging it in step two.[61] The ALJ then continued through steps four and five of the sequential analysis before arriving at his conclusion.[62]

On appeal, the plaintiff argued that the ALJ committed reversible error in failing to consider her obesity.[63] In opposition, the Commissioner cited *Rutherford* in that the ALJ's adoption of the provided medical opinions "constitutes a

---

[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] *Id.* at 504.
[62] *See id.* at 502-03.
[63] *Id.* at 503.

satisfactory, if indirect, consideration of" obesity.[64] The Court distinguished the case from *Rutherford* by stating that the plaintiff in *Rutherford* "did not assert obesity as an impairment, nor did the ALJ note, or discuss, it."[65] In contrast, the plaintiff in *Diaz* had initially asserted obesity as an impairment, the ALJ acknowledged it as a severe impairment, and the Court found the plaintiff's morbid obesity, "as a matter of common sense," seemingly would exacerbate her other impairments.[66]

The Third Circuit in *Diaz* based its holding on the fact that the plaintiff initially asserted obesity as a severe impairment and the ALJ acknowledged it.[67] Accordingly, the Court held that the ALJ's failure to discuss the plaintiff's obesity individually and in combination with her other impairments, after recognizing it as an impairment, was reversible error.[68]

Turning to the instant matter, as Magistrate Judge Mehalchick correctly reasoned in her Report and Recommendation and contrary to Plaintiff's contention that *Diaz* governs this matter, I find *Rutherford* most instructive. First, as in both *Diaz*[69] and *Rutherford*,[70] the medical evidence provided here indicated that Plaintiff

---

[64] *Id.* at 504.
[65] *Id.*
[66] *Id.*
[67] *Id.* at 504.
[68] *Id.* at 505.
[69] *See id.* at 502.
[70] *See Rutherford*, 399 F.3d at 552.

suffered, in part, from obesity.[71] Unlike the ALJ in *Diaz*,[72] but similar to the ALJ in *Rutherford*,[73] the ALJ here did not find obesity as a severe impairment at step two; the ALJ found only the following to constitute severe impairments: "Lumbar degenerative disc disease, Osteoarthritis of the Lumbar Spine and Degenerative Joint Disease of the Bilateral Knees, [and] Status Post Left Knee Replacement."[74] Contrary to the ALJ in *Diaz*, the ALJ here was not required to consider obesity "alone and in combination with her other impairments" because it was neither found nor acknowledged by the ALJ as a severe impairment.[75] In line with *Rutherford*, because the ALJ adopted the medical evidence provided that noted Plaintiff's obesity, the ALJ's decision "constitutes a satisfactory if indirect consideration of" Plaintiff's obesity.[76]

Further, the ALJ here asked Plaintiff to describe what affected her ability to work besides her knee and lower back pain.[77] Plaintiff asserted a brief, non-specific response concerning her weight.[78] Specifically, Plaintiff stated:

> I'd say if I stand for an hour, I'd have to take a break. Something over an hour, I would definitely have to take a break, just standing all your

---

[71] ECF No. 10-4, at 7.
[72] *See Diaz*, 577 F.3d at 502.
[73] *See Rutherford*, 399 F.3d at 552.
[74] ECF No. 10-3, at 7.
[75] *Diaz*, 577 F.3d at 504.
[76] *Rutherford*, 399 F.3d at 553.
[77] ECF No. 10-3, at 43.
[78] *Id.* at 44.

weight starts the – you start feeling it, and wherever it hurts, it goes right to the pain.[79]

Following *Rutherford* and *Skarbek*, Plaintiff's "generalized response," without more, is insufficient to persuade the Court that remand is necessary, especially when the ALJ has considered the entire record including all medical evidence provided.[80] Plaintiff generally stated that her weight contributes to her pain; however, she makes neither a specific assertion at the ALJ hearing nor points to anything additional in her objection to indicate that the ALJ's failure to specifically discuss obesity was reversible error.

### 2. Pain Disorder

Plaintiff also contends that the ALJ's failure to acknowledge or discuss Dr. Masey's diagnosis of pain disorder was reversible error.[81] She argues that such a failure to discuss her pain disorder undermines step three of the sequential analysis.[82]

Plaintiff's contention, however, is without merit. *Rutherford* is also instructive here in that Dr. Masey diagnosed Plaintiff with pain disorder, which was evidence provided in Dr. Masey's medical opinion. As the Court discussed in *Rutherford*, because doctors – such as Dr. Masey – "must also be viewed as aware"

---

[79] *Id.*
[80] *See Rutherford*, 399 F.3d at 553; *see also Skarbek*, 390 F.3d at 504.
[81] ECF No. 25, at 5.
[82] *Id.* at 5-6.

of a plaintiff's condition, an ALJ's adoption of the doctor's conclusion "constitutes a satisfactory if indirect consideration of that condition."[83]

While the ALJ did not give Dr. Masey's diagnosis of pain disorder a more comprehensive discussion, the ALJ nevertheless evaluated medical evidence as it pertained to chronic joint pain.[84] Indeed, in determining whether Plaintiff has an impairment that meets one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ found "no evidence indicating that the [Plaintiff] has . . . chronic joint pain . . . with signs of limitation of motion or abnormal motion of the knee . . . resulting in inability to ambulate effectively."[85] The ALJ further discussed Plaintiff's allegations of pain in that the medical examinations do not document Plaintiff experiencing "acute distress" from her pain.[86] Any error that the ALJ committed was harmless because, in considering the entire record, which the ALJ did here, the ALJ "considered the combined effects of all Plaintiff's impairments, severe, and non-severe, throughout the subsequent steps of the evaluation process. . . ."[87]

---

[83] *Rutherford*, 399 F.3d at 553.
[84] *See* ECF No. 10-3, at 11.
[85] ECF No. 10-3, at 11.
[86] ECF No. 10-3, at 15.
[87] *Slaughenhoupt v. Comm'r of Soc. Sec. Admin.*, Civ. No. 15-1345, slip op. at *4 (W.D. Pa. Dec. 7, 2016).

I find that the ALJ's conclusions as to Plaintiff's medically determinable impairments were harmless error and do not require remand because the ALJ's findings were based on substantial evidence.

### C. The ALJ's failure to address the restrictions found in Dr. Goodman's medical opinion was harmless error.

Plaintiff's final contention distills the ALJ's findings down to a superficial reading. While the ALJ found that the Plaintiff "is required to alternate sitting and standing on an hourly basis,"[88] Plaintiff essentially argues that the ALJ's failure to include Dr. Goodman's notation of "must get up as needed" constitutes reversible error.[89]

Contrary to Plaintiff's contention, the Third Circuit does not require an ALJ in his or her findings to discuss "every tidbit of evidence included in the record."[90] The Plaintiff faults the ALJ for not including five purportedly magic words – "must get up as needed" – which she believes justify remand.[91] In her determinations, however, the ALJ discussed each of Dr. Goodman's findings and articulated what weight she accorded to his medical opinion.[92]

---

[88] ECF No. 10-3, at 11.
[89] *See* ECF No. 25, at 6; *see also* ECF No. 10-10, at 7.
[90] *Hur v. Barnhart*, 94 Fed.Appx. 130, 133 (3d Cir. 2004).
[91] *See Ellow v. Astrue*, Civ. No. 11-7158, 2013 WL 159919, at *7 (E.D. Pa. Jan. 15, 2013).
[92] *See* ECF No. 10-3, at 11-15.

The ALJ properly based her findings that the Plaintiff must be permitted to "alternate sitting and standing on an hourly basis" on substantial evidence.[93] It is not my prerogative to set the ALJ's decision aside if it is based on substantial evidence, even if I "would have decided the factual inquiry differently."[94] Merely because the ALJ did not include those five words in her finding does not support a claim that she ignored them.[95] To do so would be to draw an inference from a negative. This last contention is without merit.

## IV. CONCLUSION

For the foregoing reasons, I find that the ALJ's decision to deny Plaintiff social security benefits was supported by substantial evidence. Accordingly, I find no reason to disturb Magistrate Judge Mehalchick's May 3, 2017 Report and Recommendation, which shall be adopted in full.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[93] ECF No. 10-3, at 11.
[94] *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).
[95] *See Thompson v. Comm'r of Soc. Sec.*, Civ. No. 12-4755(NLH), 2013 WL 5476432, at *6 n.3 (D.N.J. Sept. 28, 2013).